# CASES DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS

---

THE FIDELITY MUTUAL LIFE INSURANCE COMPANY *v.*
HAMILTON.

## Opinion delivered October 27, 1913.

1. CONTRACTS—EVIDENCE.—Where appellant brought an action against
appellee on a written contract, and sets out in its complaint the
section of the contract relied on for a recovery, and appellee ad-
mitted the existence of the contract, but sought to avoid it by
claiming that it had terminated, it is unnecessary to introduce the
contract in evidence. (Page 5.)

2. PRINCIPAL AND AGENT—TERMINATION OF CONTRACT.—Appellee entered
into a written contract to act as agent for appellant; an insur-
ance company, to procure applications for insurance. Under
Kirby's Digest, § 4366, agents were required to procure license cer-
tificates before procuring applications. Appellant procured and de-
livered to appellee the annual license. *Held*, later when appellant
failed for two years to deliver said license to appellee, but later did
deliver a license to him under which he procured an application,
that the contract between parties was not terminated by the failure
for two years of the appellant to deliver the license, and the ap-
pellee was therefore bound by its terms. (Page 5.)

Appeal from Ouachita Circuit Court; *George W.
Hays,* Judge; reversed.

*Rose, Hemingway, Cantrell & Loughborough,* for
appellant.

*Powell & Taylor,* for appellees.

HART, J. On May 16, 1902, appellant, The Fidelity
Mutual Life Insurance Company, entered into a written
contract with appellee Hamilton, whereby it appointed
him its agent for the purpose of soliciting and procuring
applications for insurance, and agreed to pay him a

stated commission. On the same day, appellee Hamilton, with the other appellees as his sureties, entered into a bond to said company in the sum of five hundred dollars to insure the faithful performance of his obligations under said contract. The bond was conditioned that he should pay to said insurance company all moneys which came into his hands as agent for said company, and was further conditioned for the performance of all the provisions in any and all contracts or agreements heretofore or hereafter made between him and the said insurance company.

Section 4363 of Kirby's Digest provides, in substance, that no person shall act as agent, in this State, of any insurance company of another State until the provisions of the act have been complied with on the part of the company and there has been granted to said company by the Auditor a certificate of authority showing that the company is authorized to transact business in this State.

Section 4366 reads as follows: "Companies to which certificates of authority are issued, as provided by section 4363, shall from time to time certify to the Auditor the names of the agents appointed by them to solicit risks, issue policies or receive applications in this State; and no such agent shall transact business until he has procured from the Auditor a certificate showing that the company has complied with the requirements of this act, and that the person named in said certificate has been duly appointed its agent."

From the year 1902 until the year 1908 appellant regularly furnished to Hamilton the certificate provided for in section 4366. During the years 1908 and 1909 this certificate was not sent by the company to Hamilton, and during this time Hamilton made no demand or request for same, and did not transact any business for the company. During the summer of 1910, Hamilton wrote to

R. C. Bright, the manager of said company for the State of Arkansas, at Little Rock, Arkansas, that if he would send him a certificate of authority, as provided by the section of the digest above quoted, he thought he could secure an application for insurance in the sum of five thousand dollars on the life of R. H. Terrell. The certificate was sent to Hamilton, and on August 17, 1910, appellant company received from Hamilton an application for an insurance policy upon the life of R. H. Terrell for five thousand dollars. The premium upon the policy to be issued to Terrell amounted to $267.95. The policy in question was subsequently delivered by Hamilton to Terrell. Hamilton collected the premium from Terrell and retained for his commission $166.77, this being 60 per cent of the amount of the premium. He sent in the remainder of the premium to Bright. Subsequently appellant company cancelled the policy on the life of Terrell and returned to him the full amount of the premium, viz: $267.95. The evidence on the part of the appellant shows that the policy was cancelled because the company learned that the statements in the application upon which the policy was issued were not full, complete and true, as therein stated. The policy was surrendered to the company by Terrell after it had been cancelled, and the company then returned to him the amount of the first premium. After the policy was issued and delivered to Terrell, a controversy arose between Bright, the manager of the company for the State of Arkansas, and Hamilton as to the amount of the latter's commission for securing the policy. Hamilton claimed that he was entitled to 60 per cent commission and Bright insisted that he was only entitled to 50 per cent. Several letters passed between the parties in regard to the amount of the commission that should have been retained by Hamilton. The correspondence is somewhat voluminous, and we do not deem it necessary to set it out in full. It is sufficient to say that in the correspondence it appears that a law was passed in the domicile of the appellant company whereby its agents could

thereafter only charge 50 per cent commission for securing policies of insurance in said company. The company at that time had two classes of agents in Arkansas, one receiving 50 per cent commission, and the other receiving 60 per cent. Hamilton belonged to the latter class. During the spring of 1907 he went into the office of Bright and asked him if the law above referred to would affect the contract he had with the company. Bright replied that it would not. Bright wrote to Hamilton that his contract made in 1902 had been cancelled by the company when the law above referred to went into effect. In his testimony, he states that he thought this was true when he wrote it; that after the law referred to was passed, the company intended to cancel all its contracts with agents where the amount of commission provided in the contract was 60 per cent and that he thought it had done so; that he wrote the letter in question to Hamilton while still under this belief, and did not discover that Hamilton's contract made in 1902 had not been changed until the present suit was instituted. In other words, Bright says that he thought the company had changed all contracts of its agents where formerly they had received a commission of 60 per cent, and thought that Hamilton's contract had been so changed at the time he had the correspondence with him about his commission on the Terrell policy; that later on he found out that the contract of Hamilton, by some oversight, had not been changed.

After the policy was cancelled and the first premium returned to Terrell by the company, the company demanded of Hamilton that he should return to it the amount of the first premium retained by him, and, upon his refusal to do so, instituted this action to recover that amount.

The case was tried before the court sitting as a jury, and the court found in favor of appellees, and rendered judgment in their favor for the costs of suit. The case is here on appeal.

Counsel for appellees seek to uphold the judgment on the ground that the contract on which plaintiff predicates its action was not introduced in evidence. Appellant bases its right of recovery in this action on section 6 of the contract entered into between it and appellees in May, 1902. This section is set out in full in appellant's complaint, and is as follows:

"*Sixth.* Whenever in the judgment of the said Fidelity Mutual Life Insurance Company it shall become necessary to recall any policy issued by said company, the agent who received a commission on said policy shall promptly surrender and pay over to the said company commissions received by him on account of said policy. If an agent shall cause an applicant to be examined contrary to the printed instructions of the said company, or shall fail to deliver any policy, then such agent shall be liable for and shall pay the expense of the medical examination."

Appellees, in their answer, admit that this contract was entered into, and seek to avoid liability under its provisions, because they say it had been terminated at the time Hamilton procured the application of insurance on the life of Terrell. It was, therefore, unnecessary to introduce the contract in evidence, because, as we have already seen, so much of the contract as was necessary to determine the rights of the parties under the present suit was set out in appellant's complaint and the existence of the contract was admitted by appellees in their answer. See *Russellville Water & Light Co.* v. *Sauerman,* 109 Ark. 501.

There is no testimony in the record tending to show that the contract and bond executed by appellees in 1902 was ever changed or formally cancelled by either the act of the company or of Hamilton. The sole contention of appellees is that the contract was terminated because the appellant company did not send to appellee Hamilton the certificate provided by section 4366 of Kirby's Digest, above quoted, during the years 1908 and 1909. We do not think the omission of the company to send

this certificate to Hamilton had the effect to terminate the contract with him. It only suspended the right of appellee Hamilton to solicit insurance until he should receive the certificate provided for. Under the statute, it was his duty to procure from the Auditor a certificate showing that the company had complied with the requirements of the act and that he had been appointed its agent. The mere fact that it had been the custom of the company to procure this certificate and send it to Hamilton did not amount to a termination of the contract because the company failed to perform this service for him. Both appellant and appellee Hamilton seem to have adopted this construction of their contract, and both parties treated the contract as in force when the Terrell policy was solicited and issued. This is shown by the fact that when Hamilton ascertained there was a probability of Terrell taking out insurance in appellant's company he did not write for a new contract, but simply wrote in to the State manager for a certificate as provided for in section 4366 of the Digest. When he secured the policy of insurance and collected the first premium, he retained as his commission the amount provided for in his contract made in 1902. This shows that he considered the contract to be still in force. It is true that Bright wrote to him in their controversy about the amount of commission that the contract of 1902 was not in force; but, as Bright explained in his testimony, he did this under the mistaken belief that Hamilton's contract of agency made in 1902 had been cancelled in 1907 and a new contract had been entered into with him. Subsequently, he discovered that the original contract had not been cancelled by the company and no other contract had been entered into with Hamilton. Hamilton himself admits that no notice had ever been given him by the company that his original contract had been cancelled, and says that he never gave the company any notice that he intended to cancel it. So, as above stated, the contract was still in force when the Terrell policy was issued unless it was terminated by the failure of the company to send Hamil-

ton the certificate provided for by section 4366 of Kirby's Digest during the years 1908 and 1909; but, as we have already seen, this did not have the effect to terminate the contract. Hamilton can not claim that the contract was still in force for the purpose of allowing him his commission and not in force as to its other provisions. If the contract was in force when the Terrell policy was procured, it necessarily follows that the bond was also in force.

Under the undisputed evidence, as disclosed by the record, the court should have found in favor of appellant, and erred in finding in favor of appellees. For this error, the judgment must be reversed, and, inasmuch as the record shows that the case has been fully developed, judgment will be entered here in favor of appellant.